LENORE SCULLIN CLARK, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

HARRY SCULLIN AND BERNICE W. SCULLIN, HIS WIFE, PETITIONERS, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 7807, 7808.   Promulgated June 20, 1946.

*Emmet T. Carter, Esq.*, for the petitioners.
*Gene W. Reardon, Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: The only issue which we have to decide in these proceedings is whether petitioners had a capital loss when they sold certain stock warrants in the taxable year, or whether, as respondent contends, they had no loss, but rather a capital gain.

The parties are in agreement as to the amounts of money for which petitioners sold their stock warrants in 1941 and they are in agreement as to the cost basis of the debentures which the trust in 1937 exchanged under the plan of reorganization. What the parties do not agree about is the cost basis of the stock warrants which were sold in the taxable year. Petitioners claim a cost basis of $3.41 for each warrant, which has been arrived at by allocating a part of the cost of the debentures to the stock warrants on a basis of comparison

between the fair market value of the warrants at the time they were received and the alleged fair market value of the preferred stock at the time it was received. Respondent has determined that petitioners' cost basis of the warrants was zero when they were received and that consequently all that they received for the warrants, after deducting the cost of selling them, was gain and was taxable at capital gain rates. We think respondent's determination must be sustained.

Petitioners in their brief rely heavily upon *Morainville* v. *Commissioner*, 135 Fed. (2d) 201. The petitioners in their brief point out that the contention of the Commissioner as stated by the court in the *Morainville* case was as follows:

In sum, the Government contends that the dividend of two shares of Series B, representing arrears in dividends on each share of Second Preferred Stock, was subject to tax as income, for the reason that it is a dividend in payment of the arrears; that it was payable only at the option of the stockholder; that it was unnecessary for the stockholder to exchange his original holding of stock in order to receive the stock representing the accrued dividends; and that, therefore, the distribution of the stock as dividends covering arrears in dividends, was a transaction separate from the exchange of the shares of Series B stock for the previously designated Second Preferred Stock.

The petitioners seem to argue that we have essentially the same issue here as was present in the *Morainville* case and that, therefore, we should hold against the Commissioner as the court did in the *Morainville* case.

But the Commissioner is making no such contention as he made in the *Morainville* case. He is not contending here that, when the trust in 1937 received the stock warrants in complete settlement of the past due interest on the debentures, it received taxable income equal to the fair market value of the warrants. He concedes that the trust was not in receipt of taxable income when in 1937 it received the stock warrants under the circumstances detailed in our findings of fact. In fact it has been definitely stipulated that both the 29,940 shares of 5 per cent preferred stock and the 79,840 stock warrants were received by the trustees in a nontaxable reorganization. We do not have the year 1937 before us, but if we did, we would, of course, have to hold under the facts as stipulated that neither the trustees of the will of John Scullin nor the petitioners were in receipt of income when they received the preferred stock and stock warrants in exchange for the debentures and all accrued and unpaid interest due thereon. Hence we think that cases like *Morainville* v. *Commissioner*, *supra*, are not applicable, because the Commissioner is not making the same contention as he there made. In the *Morainville* case and other similar cases cited by petitioners, no question concerning the determination of cost basis upon subsequent sale of the securities received in the exchange was involved.

What the Commissioner is contending in the instant case, as we understand it, is substantially this: (1) Under the plan of reorganization the trustees under the will of John Scullin definitely exchanged debentures which had a cost basis of $1,452,000 for 29,940 shares of preferred stock. Hence all the cost basis of the debentures must be allocated to the preferred stock and none of it can be allocated to the stock warrants. (2) Under the plan of reorganization the trustees specifically received the 79,840 stock warrants in lieu of and in satisfaction for all accrued, accumulated, and unpaid interest upon said debentures, but, because the exchange was in a nontaxable reorganization and none of such accrued and unpaid interest had ever been returned as taxable income, the cost basis of such stock warrants must be held to be zero under section 113 of the Internal Revenue Code. We think the facts support the Commissioner in these contentions. The plan of reorganization, which was approved by the court and was carried out, is in evidence. Section VII thereof provides for "Allocation of capital stock of new company." It reads in part as follows:

It is proposed that the capital stock of the New Company shall be allocated and distributed as follows:

A. 29,940 shares of Preferred Stock to the holders of $1,497,000 of outstanding Debentures on the basis of 20 shares of such stock for each $1,000 principal amount of such Debentures, which Debentures shall then be cancelled, together with the coupons evidencing interest thereon.

It seems clear to us that, because of the above provision, the $1,452,000 stipulated cost of the debentures should be prorated among the 29,940 shares of preferred stock, and if and when the trustees of the John Scullin trust sell any of these preferred shares, gain or loss will then be realized for tax purposes.

Section IX of the plan of reorganization provides for "Issuance and distribution of stock purchase warrants." This section IX provides in part as follows:

There shall be issued Stock Purchase Warrants dated as of May 1, 1937, in bearer form, which will entitle the holder for each four of such warrants to subscribe for one (1) share of Common Stock for Ten Dollars ($10.00) per share within five (5) years from the date thereof. An aggregate of 524,840 warrants shall be issued as follows:

\* \* \* \* \* \* \*

B. 79,840 thereof to the holders of the Debentures, which warrants are in lieu of and in satisfaction for all accrued, accumulated and unpaid interest upon said Debentures, on the basis of 53⅓ warrants for each $1,000 face amount of Debentures.

It therefore seems clear from the foregoing that the trustees received these stock purchase warrants strictly in settlement of the past due interest on the debentures and for nothing else, and, while the receipt of such warrants was not taxable income to the trustees because it was part of a plan of reorganization, it also did not serve to give them any

cost basis for the stock warrants. The stock warrants cost neither the trustees nor the beneficiaries of the trust anything when distributed to them. Of course the claim of the trustees for accumulated and unpaid interest on the debentures was a valuable right, but since this unpaid interest was never taken into income by the trustees, it had no cost basis to them. Petitioners do not contend that the past due and unpaid interest on the debentures had any cost basis to them. What they are contending is that the $1,452,000 stipulated cost of the debentures should be allocated between the preferred stock and the stock purchase warrants. But for reasons we have already stated we reject this contention. Therefore, in 1941, when petitioners, beneficiaries of the trust, sold the warrants here involved, they had no cost basis under section 113 of the code and all that they received, less expense of selling, represented gain to them. That gain the Commissioner has determined shall be taken into account at capital gain rates, and in this determination we sustain him.

So far as we can see, there is nothing in this holding which is in conflict with *Morainville* v. *Commissioner, supra; Skenandoa Rayon Corporation* v. *Commissioner*, 122 Fed. (2d) 268, affirming 42 B. T. A. 1287; *South Atlantic Steamship Line*, 42 B. T. A. 705, and other cases along the same line cited by petitioners in their brief. So far as the question we have here to decide is concerned, we do not think they are in point.

*Decision will be entered for the respondent.*